IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| WILLIE GRANT, | : |
|     Plaintiff, | |
|     v. | :    Case No. 3:19-cv-80 |
| MONTGOMERY COUNTY, OHIO, *et al.*, | :    JUDGE WALTER H. RICE |
|     Defendants. | : |

---

DECISION AND ENTRY SUSTAINING MOTION OF MONTGOMERY COUNTY, OHIO AND THE MONTGOMERY COUNTY BOARD OF COMMISSIONERS FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c) (DOC. #13), BUT GRANTING PLAINTIFF 30 DAYS TO SEEK LEAVE TO FILE AN AMENDED COMPLAINT; OVERRULING AS MOOT DEFENDANTS CITY OF DAYTON, OHIO, OFFICER JAMIE LUCKOSKI AND OFFICER RANDY BETSINGER'S MOTION TO DISMISS FOR FAILURE TO PROSECUTE (DOC. #16)

---

Following his arrest and indictment on felony criminal charges, Plaintiff Willie Grant filed suit against Montgomery County, Ohio and its Board of Commissioners ("the Montgomery County Defendants"), the City of Dayton and its Board of Commissioners, and Dayton Police Officers Jamie Luckoski and Randy Betsinger ("the Dayton Defendants"). Plaintiff seeks relief under 42 U.S.C. § 1983 for alleged violations of his constitutional rights.

This matter is currently before the Court on two pending motions: (1) the Montgomery County Defendants' Motion for Judgment on the Pleadings, Doc.

#13; and (2) the Dayton Defendants' Motion to Dismiss for Failure to Prosecute, Doc. #16.

I. **Background and Procedural History**

On the evening of March 17, 2017, Dayton Police Officers Jamie Luckoski and Randy Betsinger responded to an anonymous tip that there were two males selling heroin from a burgundy Pontiac near 415 Negley Place.  The officers found a vehicle matching that description near that location and blocked it in so that the occupants were not free to leave.  When the officers approached the vehicle, they observed contraband inside.  They arrested Plaintiff and took him to the Montgomery County Jail.  He was indicted on criminal felony charges.  On March 1, 2018, the Montgomery County Court of Common Pleas sustained his motion to suppress evidence, and all charges against him were then dismissed.

Plaintiff, who was at that time represented by counsel, filed this lawsuit on March 18, 2019.  Doc. #1.  The Complaint alleges that Plaintiff is disabled and wheelchair bound.  It further alleges that, during the time he spent at the Montgomery County Jail, he was taken to the hospital three times.  He alleges that his wheelchair padding was taken and never returned, that his specially-modified car was impounded and later destroyed, and that money seized at the time of his arrest was not returned for more than one year.

In Count I, Plaintiff seeks relief under 42 U.S.C. § 1983 against Officers Luckoski and Betsinger for illegal search and seizure in violation of his Fourth Amendment rights. He also alleges that the officers used excessive force.

In Count II, Plaintiff seeks relief under § 1983 against Montgomery County and the City of Dayton for: (1) failure to adequately train, supervise and discipline the officers; (2) implementing "customs and policies for training and supervision of law enforcement on searches and seizures, that, on their face, violate the Fourth Amendment" or that were facially valid but implemented "in a manner such that constitutional violations were likely to be, and were, visited upon those inhabiting, visiting, or otherwise within the jurisdictional limits of Montgomery County and/or the City of Dayton"; (3) implementing "customs and policies for the training and supervision of law enforcement on the custody and care of accused persons and/or inmates with physical disabilities that, on their face violate the Fourteenth Amendment" or are facially valid, but implemented "in a manner such that constitutional violations were likely to be, and were, visited upon those inhabiting, visiting, or otherwise within the jurisdictional limits of Defendants"; and (4) deliberate indifference to Plaintiff's serious medical needs while he was housed at the Montgomery County Jail.

On October 30, 2019, noting that it appeared that service had not yet been made on the City of Dayton Board of Commissioners, the Court issued an Order directing Plaintiff to show cause within 20 days why the action should not be dismissed. Doc. #8. No response was filed.

3

On June 2, 2020, during a conference call, Plaintiff's counsel indicated that she planned to file a motion to withdraw as counsel. However, she did not file that motion until October 8, 2020. Doc. #14. In the meantime, on July 31, 2020, the Montgomery County Defendants filed a motion for judgment on the pleadings. Doc. #13. On October 9, 2020, the Court sustained the motion to withdraw as counsel and gave Plaintiff until November 9, 2020, to obtain new counsel and file a response to the pending motion for judgment on the pleadings. Doc. #15. Nothing was filed.

On November 24, 2020, the Dayton Defendants filed a motion to dismiss for lack of prosecution. Doc. #16. They noted that Plaintiff had not responded to the show cause order or to the motion for judgment on the pleadings. On December 14, 2020, Plaintiff, now appearing *pro se*, filed responses to the motion to dismiss and to the motion for judgment on the pleadings. Docs. ##17, 18. On December 22, 2020, the Dayton Defendants filed a reply, Doc. #19.

## II. Montgomery County Defendants' Motion for Judgment on the Pleadings (Doc. #13)

Montgomery County and its Board of Commissioners filed a Motion for Judgment on the Pleadings, Doc. #13. Plaintiff's memorandum in opposition to this motion was filed on December 14, 2020, more than a month after the extended deadline. The Montgomery County Defendants filed no reply brief.

4

### A. Fed. R. Civ. P. 12(c)

Motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) are analyzed under the same standard as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Warrior Sports, Inc. v. National Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted). However, the court need not accept as true legal conclusions or unwarranted factual inferences. *Id.* (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir.1999)).

To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A "legal conclusion couched as a factual allegation" need not be accepted as true, nor are recitations of the elements of a cause of action

5

sufficient. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### B. 42 U.S.C. § 1983

Plaintiff's Complaint seeks relief under 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). In order to recover under § 1983, a plaintiff must prove that a defendant, while acting under color of state law, violated rights secured by the Constitution or laws of the United States. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Dayton Police Officers Jamie Luckoski and Randy Betsinger are sued in their individual and official capacities. As the Supreme Court explained in *Kentucky v. Graham*, 473 U.S. 159 (1985), an individual-capacity suit seeks to impose personal liability on a government official for actions taken under color of state law. An official-capacity suit, however, is the equivalent of an action against the governmental entity of which the officer is an agent. *Id.* at 165.

A governmental entity cannot be held liable under § 1983 merely because it employs an individual who engages in unconstitutional conduct. In addition to proving that an agent of the municipality, while acting under color of state law, violated the plaintiff's constitutional rights, a plaintiff must also prove that a policy or custom of the governmental entity was the "moving force" behind the alleged

6

constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

With these general principles in mind, the Court turns to the merits of the Montgomery County Defendants' motion for judgment on the pleadings on both Counts of the Complaint.

### C.   Count I

Count I of the Complaint asserts claims against Dayton Police Officers Luckoski and Betsinger for alleged violations of Plaintiff's Fourth and Fourteenth Amendment rights. Although not expressly stated, this claim appears to be brought against the officers only in their individual capacities. It seeks judgment against the officers in the form of compensatory and punitive damages.

Plaintiff seeks no explicit relief in Count I against the Montgomery County Defendants. Nevertheless, the Complaint alleges that the officers were "employed by Montgomery County and under contract with the City of Dayton," and that they acted within the scope of their employment as law enforcement officers "with Montgomery County and the City of Dayton." Doc. #1, PageID##3, 7.

To the extent that these allegations could be interpreted as an attempt to hold the Montgomery County Defendants liable for the conduct of the Dayton police officers, the Montgomery County Defendants have moved to dismiss this Count. They note that, under Ohio law, the county has no authority to hire, train or manage a city's police department. Ohio Revised Code § 737.05 grants exclusive authority over the police department to the city's director of public

7

safety. Montgomery County neither employs the Dayton police officers nor establishes police policy.

Accordingly, to the extent that Count I could be construed to assert an official-capacity claim against the officers, the Court finds that Plaintiff has failed to state a plausible claim for relief against the Montgomery County Defendants and DISMISSES any such claim WITH PREJUDICE.[1]

### D. Count II

In Count II of the Complaint, Plaintiff asserts § 1983 claims against Montgomery County and the City of Dayton. The Montgomery County Defendants seek dismissal of the claims brought against them.

To the extent that Plaintiff alleges that the Montgomery County Defendants are liable for failing to adequately and properly train and/or supervise the *Dayton police officers*, ratifying the officers' conduct by allowing them to return to their duties following the illegal searches and seizures, and implementing customs and policies for training and supervision of law enforcement officers with respect to searches and seizures, Plaintiff has failed to state a plausible claim for relief against the Montgomery County Defendants. As previously noted, the Montgomery County Defendants have no authority over Dayton police officers or over the policies and procedures of the Dayton Police Department. This portion of the claim asserted in Count II is therefore DISMISSED WITH PREJUDICE.

---

[1] This ruling does not affect the viability of Count I with respect to the Dayton Defendants.

8

Count II, however, also alleges constitutional claims arising out of Plaintiff's stay at the Montgomery County Jail. Paragraph 44 alleges that the Montgomery County Defendants "implemented customs and policies for the training and supervision of law enforcement on the custody and care of accused persons and/or inmates with physical disabilities." Plaintiff alleges that, on their face, these customs and policies violate the Fourteenth Amendment. In the alternative, he alleges that these customs and policies, although facially valid, were implemented "in a manner such that constitutional violations were likely to be, and were, visited upon" those within Defendants' care at the Montgomery County Jail.

Paragraph 45 alleges that the Montgomery County Defendants were unable to properly care for Plaintiff's special needs while he was housed at the Montgomery County Jail, and that the County should have "reasonably known such, but deliberately disregarded the same," causing him to "suffer great physical injury from the serious aggravation of his medical condition, prolonged pain and suffering, and the serious delay of and/or complete inability to move forward with a scheduled vital surgery" that would have "drastically improved Plaintiff's quality of life."

Ohio Revised Code § 307.021 provides that the county sheriff has charge over the county jail and is responsible for its operation. The Court notes, however, that Plaintiff has not sued the Montgomery County Sheriff or any specific employee of the Montgomery County Jail. Plaintiff has sued only Montgomery County and its Board of Commissioners.

9

Nevertheless, the law is clearly established that the county can be held liable for unconstitutional policies implemented at the jail. *See Marchese v. Lucas*, 758 F.2d 181, 189 (6th Cir. 1985) (holding that, because the Sheriff is the law enforcement arm of the county, the county may be held liable where an official policy of the Sheriff's Department inflicts a constitutional injury). *See also Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (same); *Howard v. Saginaw County*, No. 2:18cv12913, 2018 WL 6305332, at *2 (E.D. Mich. Dec. 3, 2018) ("A county can be held liable, pursuant to 42 U.S.C. § 1983, for acts of the county sheriff or other jail personnel regarding unconstitutional conditions inside of a county jail.").

Regardless of whether Plaintiff sues Montgomery County through its Board of Commissioners, or the Sheriff in his official capacity, the requirements are the same. Plaintiff must prove that an agent of the county, while acting under color of state law, violated his constitutional rights, and that a policy or custom of the county was the "moving force" behind the alleged constitutional violation. *Monell*, 436 U.S. at 694.

### 1. Constitutional Violation Adequately Alleged?

The first question is whether the Complaint adequately alleges a constitutional violation by an agent of Montgomery County while acting under color of state law.

### a. Deliberate Indifference to Serious Medical Needs

Broadly construed, paragraph 45 of the Complaint alleges that officials at the Montgomery County Jail were deliberately indifferent to Plaintiff's serious medical needs. In *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the Supreme Court held that deliberate indifference to serious medical needs of prisoners constitutes a violation of the Eighth Amendment.[2] In order to succeed on this claim, Plaintiff must show that: (1) he had a serious medical need; (2) Defendants knew about it; and (3) they were deliberately indifferent to it. *Id.* at 105-06.

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004) (quotation omitted). Plaintiff's Complaint alleges that he is physically disabled and wheelchair bound with highly special needs. However, the mere fact that he is wheelchair bound does not necessarily mean that he had a condition that warranted immediate medical treatment. The Complaint does not identify any "serious medical need."

In his response to the motion for judgment on the pleadings, Plaintiff elaborates on this claim. He alleges that, while at the jail, he contracted a bladder

---

[2] Because Plaintiff was a pretrial detainee during the time in question, his claims are governed by the Fourteenth Amendment's substantive due process clause rather than the Eighth Amendment's prohibition against cruel and unusual punishment. As a general rule, however, the same standards apply to both. *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001).

11

infection. In addition, the wounds on his coccyx (tailbone) grew worse. He further alleges that his catheter was ripped from his bladder when the catheter's leg strap was run over. Doc. #18, PageID#83. If Plaintiff amended his Complaint to include these allegations, this may be sufficient to state a plausible claim that he had a "serious medical need." However, as currently pled, it does not. A plaintiff cannot amend his Complaint through his memorandum in opposition to a motion to dismiss. *In re Porsche Cars N.A., Inc.*, 880 F. Supp. 2d 801, 842 (S.D. Ohio 2012) (Frost, J.).

With respect to the second element, the Complaint alleges that Defendants "should reasonably have known" that they "were unable to properly care for the special needs of Plaintiff while he was being held at the Montgomery County Jail." Doc. #1, PageID#9. Nevertheless, the Complaint fails to identify his "special needs," and fails to allege that jail employees knew of Plaintiff's specific "serious medical needs," *i.e.,* his bladder infection, the wounds on his coccyx, or the ripped-out catheter.

Similar problems affect the third element of the claim. "Deliberate indifference" has both objective and subjective components. From an objective standpoint, Plaintiff must show that the alleged deprivation of medical care was "sufficiently serious . . . posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation omitted). Given that the Complaint does not identify any particular medical condition or any serious medical

12

need, Plaintiff has not adequately alleged that the deprivation of medical care was "sufficiently serious."

From a subjective standpoint, Plaintiff must show that Defendants had a "sufficiently culpable state of mind." *Id. See also Estelle*, 429 U.S. at 104-05 (noting that deliberate indifference "may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care.").

Here, the Complaint generally alleges that Defendants "deliberately disregarded" the fact that the jail was ill-equipped to properly care for his special needs, and that, as a result, he suffered "great physical injury from the serious aggravation of his medical condition, prolonged pain and suffering, and the serious delay of and/or complete inability to move forward with a vital surgery for which Plaintiff was previously in line to have completed that would have, upon information and belief, drastically improved Plaintiff's quality of life.," Doc. #1, PageID#9.

The Complaint, however, does not allege that jail officials were aware of any of his specific medical conditions. It does not identify what "medical condition" was aggravated, or what "vital surgery" was delayed. Moreover, there are no allegations from which it can be inferred that any jail employees knew of the scheduled surgery or that they intentionally denied or delayed access to treatment for his serious medical needs.

For these reasons, the Court finds that the Complaint, as currently pled, is insufficient to state a plausible claim that jail officials violated Plaintiff's constitutional rights by being deliberately indifferent to his serious medical needs.

### b. Conditions of Confinement

The Complaint generally alleges that the Montgomery County Jail was unable to properly care for Plaintiff's special needs. However, there are no factual allegations to support such a claim.

Plaintiff's response in opposition to the motion for judgment on the pleadings raises the possibility of a separate constitutional violation concerning the conditions of confinement at the Montgomery County Jail. Therein, he states, for the first time, that, because he was not provided with a colostomy bag, he was forced to defecate on himself. He further alleges that he sometimes sat in a saturated diaper for hours, causing his cellmates to ridicule him because of the odor. He also states that he was not able to shower or brush his teeth. Doc. #18, PageID#83.

Again, these allegations are not included in the Complaint. Had they been, this may have been sufficient to state a separate Fourteenth Amendment violation. The Constitution requires that jail officials "provide humane conditions of confinement," ensuring that all inmates have "adequate food, clothing, shelter, and medical care." *Farmer*, 511 U.S. at 832. Conditions of confinement may be unconstitutional if they "transgress today's 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Hutto v. Finney*, 437 U.S.

14

678, 685 (1978) (quoting *Estelle*, 429 U.S. at 102)). In *Rhodes v. Chapman*, the Supreme Court held that conditions of confinement may be unconstitutional if they "deprive inmates of the minimal civilized measure of life's necessities." 452 U.S. 337, 347 (1981).

It would appear that the allegations contained in Plaintiff's memorandum in opposition to the motion for judgment on the pleadings may rise to this level. Again, however, as currently pled, the Complaint does not state a plausible claim of a constitutional violation.

### 2. Policy or Custom?

Even if Plaintiff had adequately alleged that an agent of Montgomery County, while acting under color of state law, violated his constitutional rights, either by exhibiting deliberate indifference to his serious medical needs or by subjecting him to unconstitutional conditions of confinement, he must also adequately allege that a policy or custom of the county was the "moving force" behind the alleged constitutional violation. *Monell*, 436 U.S. at 694. Such a policy or custom may consist of: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

Here, Plaintiff generally alleges that the Montgomery County Defendants promulgated certain customs, policies, and practices that caused the violation of

15

his constitutional rights. However, he has not identified any legislative enactment or official jail policy that resulted in the deprivation of his constitutional rights. Nor has he identified any action taken by an official with final decision-making authority. Likewise, he does not allege that the county had a custom of tolerance or acquiescence of federal rights violations. Rather, his claims against the Montgomery County Defendants are based on an alleged failure to train and supervise jail employees concerning the custody and care of individuals with physical disabilities.

However, a plaintiff asserting a failure-to-train or failure-to-supervise claim must show deliberate indifference to the rights of persons with whom the law enforcement officers (or here, the jail employees) come into contact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Proving deliberate indifference "typically requires proof that the municipality was aware of prior unconstitutional actions by its employees and failed to take corrective measures." *Miller v. Calhoun Cty.*, 408 F.3d 803, 815 (6th Cir. 2005). *See also Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) ("A failure-to-train claim . . . requires a showing of prior instances of unconstitutional conduct demonstrating that the [municipality] ha[d] ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.") (internal quotation omitted); *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (holding that, in order to succeed on a failure-to-train claim, a plaintiff must usually show "[a] pattern of similar constitutional violations by untrained employees.").

Plaintiff has not alleged any previous instances of constitutional violations against persons with disabilities who were being housed at the Montgomery County Jail, such that it can be said that the Montgomery County Defendants were clearly on notice of the need for training and supervision in this area.

In a "narrow range of circumstances," a plaintiff may be able to establish deliberate indifference without evidence of a pattern of similar violations but only if "the unconstitutional consequences of failing to train" are "patently obvious." *Id.* at 63-64. For example, in *City of Canton*, the court gave a hypothetical example of a situation in which a city armed its officers and sent them into the public to capture fleeing felons without giving them any training on the constitutional limitations concerning the use of deadly force. 489 U.S. at 390 n.10. Plaintiff's Complaint, however, is also devoid of any allegations that the unconstitutional consequences of failing to train jail employees on the proper care of pretrial detainees and inmates with physical disabilities was so patently obvious that the county should be deemed deliberately indifferent.

The Court therefore concludes that, as pled, the Complaint fails to state a plausible claim based on a failure-to-train or failure-to-supervise theory of liability.

To summarize, with respect to the alleged constitutional violations that occurred during the time that Plaintiff was housed at the Montgomery County Jail, the Complaint, as currently pled, fails to state a plausible claim for relief against the Montgomery County Defendants. The Court therefore SUSTAINS the

Montgomery County Defendants' Motion for Judgment on the Pleadings, Doc. #13.

Nevertheless, with respect to the claims of deliberate indifference to serious medical needs and unconstitutional conditions of confinement at the Montgomery County Jail, because it appears that the deficiencies in the Complaint may be able to be remedied, the Court will DISMISS these particular claims against the Montgomery County Defendants WITHOUT PREJUDICE.

Within 30 days of the date of this Decision and Entry, Plaintiff may seek leave to file an Amended Complaint if he can do so within the strictures of Fed. R. Civ. P. 11(b). He must attach a copy of the proposed Amended Complaint to his motion for leave to file.

In light of Plaintiff's previous failures to respond to the Court's orders, Plaintiff is further cautioned that, even though he is proceeding *pro se*, he must comply with applicable rules and deadlines. Failure to do so may result in dismissal of this lawsuit.

### III. Dayton Defendants' Motion to Dismiss for Failure to Prosecute (Doc. #16)

On November 24, 2020, the Dayton Defendants filed a motion to dismiss for failure to prosecute pursuant to Fed. R. Civ. P. 41(b). Doc. #16. They noted that Plaintiff had not responded to the October 30, 2019, Show Cause Order, or to the Montgomery County Defendants' motion for judgment on the pleadings. The Dayton Defendants therefore asked that the Court either dismiss the action or

18

issue a new order giving Plaintiff one more chance to respond to the pending motion.

On December 14, 2020, Plaintiff filed a *pro se* response to the motion to dismiss, urging the Court to allow his case to proceed. Doc. #17. The Dayton Defendants then filed a reply. Doc. #19. Therein, they acknowledged that it appeared that Plaintiff now intended to proceed *pro se.* They asked the Court to set this matter for a Rule 26(f) conference so that the case may move forward.

In light of the foregoing, the Court OVERRULES AS MOOT the Dayton Defendants' motion to dismiss for failure to prosecute, Doc. #16.

IV. Conclusion

For the reasons set forth above, the Court SUSTAINS the Montgomery County Defendants' Motion for Judgment on the Pleadings, Doc. #13. As to these Defendants, Count I is DISMISSED WITH PREJUDICE. All claims alleging that the Montgomery County Defendants are liable for failure to train or supervise the Dayton police officers are DISMISSED WITH PREJUDICE.

However, claims seeking to impose liability on the Montgomery County Defendants on theories of deliberate indifference to serious medical needs and unconstitutional conditions of confinement at the Montgomery County Jail are DISMISSED WITHOUT PREJUDICE. Within 30 days of the date of this Decision and Entry, Plaintiff may seek leave to file an Amended Complaint to cure the current deficiencies with respect to those claims, if he can do so within the bounds

19

of Fed. R. Civ. P. 11(b).  Plaintiff must attach a copy of the proposed Amended Complaint to his Motion for Leave to File an Amended Complaint.

The Court OVERRULES AS MOOT the Dayton Defendants' Motion to Dismiss for Failure to Prosecute, Doc. #16.

The Court will set this matter for a Preliminary Pretrial Conference after the expiration of the 30-day deadline for Plaintiff to seek leave to file an Amended Complaint, or after any such motion has been fully briefed and decided.


Date: March 30, 2021                              *Walter H. Rice*  (tp - per Judge Rice authorization after his review)
                                                  WALTER H. RICE
                                                  UNITED STATES DISTRICT JUDGE